# EXHIBIT 24



# Department of Health

Mr Peter Thompson  
Chief Executive, HFEA  
Finsbury Tower,  
103-105 Bunhill Row,  
London EC1Y 8HF

Health Science and  
Bioethics Division  
Richmond House  
79 Whitehall  
London  
SW1A 2NS

www.dh.gov.uk

Date: 7 March 2016

Dear Peter,

**DEPARTMENT OF HEALTH'S LEGAL VIEW OF THE `AUGMENT' PROCESS**

Thank you arranging for the Department to see the contention by OvaScience that the proposed 'augment' technique is allowable, subject to an HFEA licence, under the provisions of the Human Fertilisation and Embryology Act 1990 (as amended). I am writing to you to about the Department's legal view on this. I would be grateful if you could share this view with the Authority's sub-committee that will consider this matter.

The UK Government has a longstanding and fundamental policy that assisted conception treatment should only take place using natural and unmodified sperm, eggs and embryos. This policy is reflected in the provisions of the Human Fertilisation & Embryology Act 1990. The only exception to this rule is where eggs and embryos are modified to prevent the transmission of serious mitochondrial disease in accordance with the Human Fertilisation and Embryology (Mitochondrial Donation) Regulations 2015.

In particular, it is our view the clear and natural meaning of the requirement under section 3ZA(2) of the 1990 Act, that in order for an egg to be "permitted" under the Act for use in treatment the mitochondrial DNA of that egg must not have been "altered", is that there must have been no changes whatsoever to the mitochondrial DNA of the egg. Such changes would include alterations by way of adding mitochondrial DNA, including identical DNA, as well as those to the actual make-up of the mitochondrial DNA itself. To read the legislation in the way contended for by Ovascience would, in our view, be unduly narrow, and would also mean that there was no absolute prohibition in the Act on the use of gametes and embryos with additional nuclear or mitochondrial DNA being used in treatment, provided such additional DNA is identical. In our view this interpretation is not reflected in the language of the provision, would be inconsistent with the general approach under the Act, and cannot have been the intention of Parliament. The only exception to the prohibition on using any gametes in treatment other than natural, unmodified ones is under section 3ZA(5), and it was considered to be of importance that the scope of that power was limited to the treatment of serious mitochondrial disease, and that any regulations made under it would be subject to further Parliamentary scrutiny

In our view it is therefore quite clear that the legislation would not enable eggs which have had any type of mitochondrial DNA (whether identical or otherwise) added to them to be classed as "permitted" within the meaning of section 3ZA of the 1990 Act, and thus able to be used in treatment. We do not consider that an egg which has been subject to the augment process could be lawfully used in treatment in the UK either on its own or to create an embryo to be used in treatment.

I hope that this proves helpful in the sub-committee's considerations.

Yours sincerely

Ted Webb
Deputy Director, Tissues, Embryology & Donation Branch
Department of Health
Email: Edward.webb@dh.gsi.gov.uk
0044 20 7210 6301 (w)
0044 7789653461 (m)